UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMIE SEYMORE,

    Plaintiff,

v.

MICHAEL FARMER,

    Defendant.

_____/

CASE NO. 16-13808

HON. DENISE PAGE HOOD

## ORDER REGARDING VARIOUS MOTIONS IN LIMINE AND TRIAL RELATED MATTERS

**I.  BACKGROUND**

This matter is before the Court on various motions filed by Plaintiff Tommie Seymore related to trial.

On October 25, 2016, Seymore, a prisoner with the Michigan Department of Corrections, filed a pro se 42 U.S.C. § 1983 Complaint against Corrections Officer Defendant Michael Farmer alleging that Farmer violated Seymore's right to be free from retaliation in violation of the First Amendment. (ECF No. 1)  Seymore claims that Farmer falsely filed a report on December 4, 2015 that Seymore threatened him and that this false report was retaliation against Seymore after Seymore asked to speak with Farmer's supervisor.  As a result of the false report, Seymore spent eleven (11)

days in segregation and suffered extreme emotional distress. Seymore seeks actual and punitive damages.

Farmer denies the allegations by Seymore and claims that Seymore became verbally abusive during an encounter, which Farmer claims was an escalation by Seymore. Farmer wrote two misconduct charges against Seymore, which were heard by a state administrative law judge. One of the two charges was upheld.

## II.  ANALYSIS

### A.  Seymore's Motion in Limine to Allow Evidence Relevant to Emotional and Punitive Damages (ECF No. 37)

Seymore seeks to present evidence to support damages based on his emotional injuries from the violation of his First Amendment right to be free from retaliation under 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act ("PLRA"). Seymore acknowledges hat the PLRA bars civil actions for mental or emotional injury without showing physical injury, but Seymore claims he suffered a constitutional injury and the PLRA does not preclude suit for constitutional harms, citing *King v. Zamiara*, 788 F.3d 207, 213-14 (6th Cir. 2015).

Farmer agrees that Seymore may seek compensatory and punitive damages for his First Amendment retaliation claim, but he cannot seek emotional damages because he failed to allege a physical injury. Farmer argues that the PLRA requires prisoners making a claim for mental or emotional injuries to have a physical injury. 42 U.S.C.

§ 1997e(e). Farmer asserts that Seymore's motion conflates compensatory damages and emotional damages. Farmer claims that *King* noted constitutional injuries are separate from emotional, mental and physical injuries. Farmer argues that because Seymore does not allege a physical injury, he is barred from seeking emotional damages under § 1983. Farmer further argues that *King* did not abrogate 42 U.S.C. § 1997e(e) and allow claims for emotional damages when no claims of physical injury were made. Farmer agrees that Seymore is allowed to seek compensatory damages for his First Amendment retaliation case, but he cannot maintain a claim for emotional damages.

A plaintiff can recover compensatory damages for the violation of a First Amendment right. *King*, 788 F.3d at 213. "A plaintiff who alleges the violation of a constitutional right is not entitled to compensatory damages unless he can prove actual injury caused by the violation." *King*, 788 F.3d at 213. Damages may be presumed in cases where they are difficult to measure, but damages must be based "on the real injury sustained and not on either the abstract value of the constitutional right at issue or the importance of the right in our system of government." *Sublett v. Green,* Case No. 21-5300, 2022 WL 982128 at *3 (6th Cir. Feb. 15, 2022) (citations omitted); *King*. 788 F.3d at 213-14. An inmate may pursue monetary damages from a corrections officer for First Amendment retaliation if the inmate can show

compensable damages stemming from the constitutional violation, such as mental or emotional damages. *King*, 788 F.3d at 212; *Maben v. Thelen*, 887 F.3d 252, 271 (6th Cir. 2018).

The Supreme Court, in the context of a § 1983 action, has held that "compensatory damages may include ... such injuries as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.'" *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986). The Sixth Circuit has also recognized these types of injuries. *See Chatman v. Slagle*, 107 F.3d 380, 384–85 (6th Cir.1997) (listing numerous cases that have found emotional distress to be a compensable injury under § 1983, including damages for "intimidation, marital problems, weight loss, loss of sleep, shock, or humiliation"). *See, also Pembaur v. City of Cincinnati*, 882 F.2d 1101, 1104 (6th Cir.1989) ("[T]he injury need not have been a physical one. Damages for pain and suffering, mental anguish, and the like are available to the extent that actual injury has been proved."); *Bloch v. Ribar*, 156 F.3d 673, 679 (6th Cir. 1998).

Based on *King, supra*, the Supreme Court and Sixth Circuit cases holding that compensatory damages may include damages for pain and suffering, mental anguish, Seymore can raise such damages that he may have suffered at trial, if Seymore can present such evidence.

Punitive damages are appropriate in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *King*, 788 F.3d at 216. If Seymore can prove that Farmer's conduct triggers consideration of punitive damages, the factfinder can make the discretionary judgment whether or not to award punitive damages. Seymore's Motion in Limine to allow evidence relevant to emotional (compensatory damages) and punitive damages is granted.

**B.     Seymore's Motion in Limine to Allow Seymore's Appearance in Civilian Clothing Without Visible Restraints (ECF No. 52)**

Seymore seeks to appear at trial in civilian clothing and without visible shackles. Farmer did not file a written response to the motion, but indicated to Seymore's counsel that the motion was a security matter for the Court's decision.

In *Illinois v. Allen*, 397 U.S. 337 (1970), the Supreme Court recognized that requiring a criminal defendant to appear in shackles before a jury may result in an unfair trial. "Not only is it possible that the sight of shackles ... might have a significant effect on the jury's feelings about the defendant, but the use of th[e] technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Id.* at 344. Because shackling a defendant during trial is an "inherently prejudicial practice," it "should be permitted only where justified by an essential state interest specific to each trial." *Holbrook v.*

*Flynn*, 475 U.S. 560, 568–69 (1986); *see also Deck v. Missouri*, 544 U.S. 622, 633 (2005) (noting that the appearance of a criminal defendant in shackles "almost inevitably affects adversely the jury's perception of the character of the defendant"). Circuit courts have reasoned that the concerns expressed in *Allen* also apply in the context of civil trials. *Sides v. Cherry*, 609 F.3d 576, 580–81 (3d Cir. 2010); *see Davidson v. Riley*, 44 F.3d 1118, 1122 (2d Cir.1995) ("[T]he concerns expressed in *Allen* are applicable to parties in civil suits as well."); *Woods v. Thieret*, 5 F.3d 244, 246 (7th Cir.1993) ("[T]he principles from *Allen* ... extend[ ] to include not just criminal defendants, but inmates bringing civil actions and inmate-witnesses as well."); *Holloway v. Alexander*, 957 F.2d 529, 530 (8th Cir.1992) ("In [prisoner civil rights] cases, the district court has a responsibility to ensure reasonable efforts are made to permit the inmate and the inmate's witnesses to appear without shackles during proceedings before the jury."); *Tyars v. Finner*, 709 F.2d 1274, 1284–85 (9th Cir.1983) (discussing *Allen* and reasoning that "[t]he likelihood of prejudice inherent in exhibiting the subject of a civil commitment hearing to the jury while bound in physical restraints ... is simply too great to be countenanced without at least some prior showing of necessity"). "[F]airness in a jury trial, whether criminal or civil in nature, is a vital constitutional right." *Bailey v. Sys. Innovation, Inc.*, 852 F.2d 93, 98 (3d Cir.1988); *see also Estelle v. Williams*, 425 U.S. 501, 503 (1976) ("The right to

a fair trial is a fundamental liberty secured by the Fourteenth Amendment."). Requiring a party in a civil trial to appear in shackles "may well deprive him of due process unless the restraints are necessary." *Davidson*, 44 F.3d at 1122.

The trial court must balance the interest of the inmate and security in the courtroom and must make such inquiry outside the presence of the jury. It is the trial court's discretion, which cannot be delegated to the Marshal, to determine whether an inmate should be physically restrained during trial. The trial court may take into consideration a number of sources, including, but not limited to, records bearing on the inmate's disruptive and violent conduct, the opinions of correctional and/or law enforcement officers and the federal marshals. *Sides*, 609 F.3d at 582. Restraints have been approved for numerous reasons, including the poor design of the courtroom which required inmates to travel in close proximity to the bench, counsel tables and jury box to reach the stand. *Id.* at 583.

In this case, at the pretrial conference, the Court discussed with the parties putting skirts around the table in order to hide leg restraints. However, it is noted that the plaintiff's table is close to the jury room and jury box. The jury will be able to see the leg restraints when they enter the courtroom from the jury room. This can be resolved by moving plaintiff's table back so that the legs under the table cannot be seen by the jury as they walk from the jury room to the jury box. When Seymore is

at the witness stand, he can be escorted to and from the box outside the presence of the jury.

In addition, a court security officer/corrections officer can sit behind the plaintiff's table. The Court can state at the beginning that Seymore is an inmate, which is a necessary fact in this case and a jury instruction that indicates it is standard procedure to have court security officers throughout the courtroom.

Although there has been no indication as to Seymore's behavior while in prison, he is convicted of First Degree Murder and sentenced to life imprisonment. There is a security concern from the MDOC staff, the Marshal's office and the Court's duty to protect other litigants, the jury and the public.

Seymore's motion as to appearing in civilian clothing is granted. Seymore's motion as to restraints is granted as to handcuffs (such will be removed once in court and at the table), but denied as to leg restraints.

### C. Seymore's Motion to Attend Trial in Person Each Day and Material Witnesses to Testify by Video at Trial (Motion for Writs of Habeas Corpus Ad Testificandum) (ECF No. 53)

Seymore seeks Writs of Habeas Ad Testificandum under 28 U.S.C. § 2241(c)(5) for Seymore and key witnesses in this case. The Writs, having been issued on November 29, 2022, the instant motion has been granted. Seymore will appear in

person daily at trial. The four witnesses who are currently in custody, will appear by video conference, currently scheduled for January 6, 2023.

### D. Seymore's Motion to Allow Testimony from Deandre Walker (ECF No. 60)

Seymore asserts that Deandre Walker's name came to light after the parties filed their Joint Final Pretrial Order. He seeks to add Walker's testimony because he states that Walker is a victim of Farmer's abusive conduct in August 2022. Walker will show that Farmer's false report was no accident. Seymore claims Walker's testimony will show intent to abuse inmates and lack of accident. Seymore cites Fed. R. Evid. 404(b) to support the motion.

Seymore submits Walker's grievance filing about the incident which occurred in August 2022. Seymore claims that Farmer verbally accosted Walker, they argued and Farmer was placed in a holding cage then sent to segregation. Seymore claims the Walker incident is "strikingly similar" to Seymore's encounter with Farmer.

Farmer responds that at the eleventh hour, Seymore is attempting to introduce improper character evidence and that such testimony is nothing more than a smokescreen to get around the prohibition on using character evidence to prove propensity. The two incidents occurred almost seven years apart (Seymore in 2015) and that Seymore's motion is based on a grievance filed by Walker, which is hearsay and does not contain any indicia of reliability. Walker, testifying based on the

9

grievance he filed, would require witnesses to testify as to what occurred between Walker and Farmer in August 2022, whether Farmer even charged Walker with any misconduct and other documents to rebut Walker's claim based on the grievance filed.

In reply, Seymore claims that Walker's testimony is in response to Farmer's defense that he is not a bully, that he acts in good faith with Seymore and other prisoners, and that the testimony is in response to Farmer's deposition where Farmer stated he does not get into arguments with prisoners–"Never" and that the Seymore incident was "the only time." Seymore asserts that Walker's testimony is admissible to show Farmer's "intent," and "absence of mistake, or lack of accident."

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b). Courts have recognized the use of other crimes or other bad acts permissible as evidence at trial. *United States v. Blankenship,* 775 F.2d 735, 739 (6th

Cir. 1984). The Sixth Circuit has ruled that acts prior and *subsequent* to the incidents at issue are admissible pursuant to Rule 404(b). *United States v. Perry*, 438 F.3d 642, 647 n.2 (6th Cir. 2006). Other act evidence is admissible under Rule 404(b) if—(1) there is sufficient evidence that the other act in question actually occurred; (2) the evidence of the other act is probative of a material issue other than character; and (3) the probative value of the evidence is not substantially outweighed by its potential prejudicial effect. *United States v. Bartholomew*, 310 F.3d 912, 921–922 (6th Cir.2002).

To be admissible under Rule 404(b), the other act must also be "substantially similar and reasonably near in time to the offenses for which the defendant is being tried." *United States v. Love*, 254 F. App'x 511, 515 (6th Cir.2007) (citing *United States v. Carney*, 387 F.3d 436, 451 (6th Cir.2004)). With regard to the "substantially similar" requirement, the Sixth Circuit has held that "when the prior bad acts evidence is being offered for the purpose of showing intent, it need not duplicate exactly the instant charge, but need only be sufficiently analogous to support an inference of criminal intent." *Love*, 254 F. App'x at 515–516; *see also United States v. Johnson*, 27 F.3d 1186 (6th Cir.1994) (where the crime charged is one requiring specific intent, the prosecutor may use Rule 404(b) evidence to prove that the defendant acted with specific intent). With regard to the "reasonably near in time" requirement, the Sixth

Circuit has stated that the "prior conduct must be reasonably near in time under the facts of the particular case." *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir.1985). However, the court has concluded that there is "no absolute maximum number of years that may separate a prior act and the offense charged." *Id*. Finally, if the evidence meets all prior tests, the court should instruct the jury on the limited purpose for which it is being offered. *United States v. Merriweather*, 78 F.3d 1070, 1076–77 (6th Cir.1996).

Based on Seymore's proffer, it could be found that the acts are "substantially similar." However, other than the grievance filing, there are insufficient facts to determine what led up to the confrontation between Walker and Farmer in 2022. As to the "reasonably near in time" requirement, the seven year gap is great, in light of Walker's many dealings with other prisoners in those seven years. What occurred seven years after the Seymore incident is insufficient to show "intent" or "absence of mistake, or lack of accident" as Seymore claims such evidence would show. Applying the factors under Rule 404(b), there is sufficient evidence that the Walker act occurred in light of the grievance filing submitted by Walker. The Walker incident could be probative of a material issue–as to Farmer's intent and to rebut his testimony that he never has confrontations with prisoners. However, it could also be used by Seymore to show that Farmer's "character" is to abuse prisoners and that the Walker incident

12

shows such propensity, which is prohibited under Rule 404(b). The Court finds that the probative value of the evidence is substantially outweighed by its potential prejudicial effect, in light of the seven year gap and one incident in that seven year gap. Plaintiff's Motion to Allow Testimony from Deandre Walker is denied.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion in Limine to Allow Evidence Relevant to Emotional and Punitive Damages **(ECF No. 37)** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Allow Seymore's Appearance in Civilian Clothing and Without Visible Restraints **(ECF No. 52)** is GRANTED in part and DENIED in part as set forth above.

IT IS FURTHER ORDERED that Plaintiff's Motion to Attend Trial in Person Each Day and Material Witnesses to Testify by Video at Trial **(ECF No. 53)** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Allow Testimony from Deandre Walker **(ECF No. 60)** is DENIED.

s/Denise Page Hood
DENISE PAGE HOOD

                                                     United States District Judge

DATED: December 29, 2022